**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| RKS DESIGN INTERNATIONAL, | ) | |
| a California corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. **CIV-06-650-M** |
| | ) | |
| THANE INTERNATIONAL, INC., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT THANE INTERNATIONAL, INC.'S**
**MOTION TO TRANSFER UNDER 28 U.S.C. SECTION 1404(a)**
**AND BRIEF IN SUPPORT**

---

Geoffrey M. Gold, Calif. Bar #142625
  (Admitted *Pro Hac Vice*)
Gregory J. Sater, Calif. Bar #157486
  (Admitted *Pro Hac Vice*)
Rutter, Hobbs & Davidoff
1901 Avenue of the Stars, Suite 1700
Los Angeles, CA  90067
310/286-1700
310/286-1728 (Fax)
ggold@rutterhobbs.com
gsater@rutterhobbs.com

**ATTORNEYS FOR DEFENDANT**
**THANE INTERNATIONAL, INC.**

Robert W. Dace, OBA #10263
Charles L. McLawhorn, III, OBA #19523
McAfee & Taft
A Professional Corporation
Tenth Floor, Two Leadership Square
211 N. Robinson Avenue
Oklahoma City, OK  73102-7103
405/235-9621
405/235-0439 (Fax)
bob.dace@mcafeetaft.com
chad.mclawhorn@mcafeetaft.com

**ATTORNEYS FOR DEFENDANT**
**THANE INTERNATIONAL, INC.**

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION. ................................................................................................... 1

II.   BACKGROUND FACTS. ...................................................................................... 2

      A.    Both Parties Are From California. ........................................................... 2

      B.    The Agreement Was Negotiated, Signed, and Performed in California. ................ 2

      C.    The Lawsuit Is Based On TII's Alleged Acts Or Omissions In California. ........... 4

      D.    The Location of the Witnesses and Documents is California. ............................... 7

III.  THE ACTION SHOULD BE TRANSFERRED UNDER 28 U.S.C. § 1404(A). ............. 7

IV.   CONCLUSION. ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

Bussey v. Safeway Stores, Inc., 437 F. Supp. 41 (E.D. Okla. 1977)....................................................10

Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509 (10th Cir. 1991)......................7, 8, 13

Frazier v. Commercial Credit Equipment Corp., 755 F. Supp. 163 (S.D. Miss. 1991).......................13

Hoffman v. Blaski, 363 U.S. 335 (1960) ........................................................................................14

In re Horseshoe Entertainment, Inc., 305 F.3d 354 (5th Cir. 2002) ...........................................12

Jacobs v. Lancaster, 526 F. Supp. 767, 769 (N.D. Okla. 1991)...........................................8, 9 ,10, 12

Keating v. Whitmore Mfg. Co., 981 F. Supp. 890 (E.D. Pa. 1997)..................................................9

Law Bulletin Pub. Co. v. LRP Publications, Inc., 992 F. Supp. 1014 (N.D. Ill. 1998).....................13

Lindloff v. Schenectady Int'l, 950 F. Supp. 183 (E.D. Tex. 1996) ..................................................9

McAlister v. General American Life Ins. Co., 516 F. Supp. 919 (W.D. Okla. 1980) .......................10

Morris v. Peterson, 759 F.2d 809 (10th Cir. 1985)........................................................................14

National Sur. Corp. v. Robert M. Barton Corp., 484 F. Supp. 222 (W.D. Okla. 1979) .................9, 12

Northwest Animal Hosp., Inc. v. Earnhardt, 452 F. Supp. 191 (W.D. Okla. 1977)........................14

Pope v. Missouri Pac. R. R. Co., 446 F. Supp. 447 (W.D. Okla. 1978)............................................9

ROC, Inc. v. Progress Drillers, Inc., 481 F. Supp. 147 (W.D. Okla. 1979).....................................14

Scheidt v. Klein, 956 F.2d 963 (10th Cir. 1992)............................................................................14

Van Dusen v. Barrack, 376 U.S. 612 (1964) .........................................................................8, 10, 13

Walter E. Heller & Co. v. Jaimes Godbe Co., 601 F. Supp. 319 (N.D. Ill. 1984).............................9

Watkins v. Crescent, LLC, 314 F. Supp. 2d 1156 (N.D. Okla. 2004) ..........................................8, 12


**Statutes**

28 U.S.C. § 1391(a) .....................................................................................................................14

28 U.S.C. §§ 1391(a)(2) and (b)(2)..................................................................................................2

28 U.S.C. § 1404(a) ............................................................................................................1, 7, 14

28 U.S.C. § 1406(a) ........................................................................................................................2

28. U.S.C. § 1391(b)(2) ..................................................................................................................2

**Other Authorities**

F. R. Civ. P. 12(B)(2)......................................................................................................................2

**Defendant Thane International, Inc.'s, Motion to Transfer**
**Under 28 U.S.C. Section 1404(a) and Brief in Support**

Defendant Thane International, Inc. ("TII") hereby respectfully moves for an Order transferring this action to the United States District Court for the Central District of California under 28 U.S.C. Section 1404(a). In support of this motion, TII submits the following brief.

## I.    INTRODUCTION.

Without any legitimate basis for doing so, Plaintiff RKS Design International ("RKS"), a company in *California*, inexplicably has selected Oklahoma as the venue in which to sue Thane International, Inc. ("TII"), another company in *California*, on claims that arise from a contract that has a *California* choice of law clause and was negotiated, signed, performed (for over three years), and then allegedly breached in *California*.[1] All of the party and *non*-party witnesses live and work in *California*. The case has no connection whatsoever to Oklahoma. To have it heard here would inconvenience TII and cause it substantive prejudice, while conferring no bona fide benefit on RKS, since RKS's witnesses, like TII's, are all in California.

The only "nexus" between Oklahoma and this matter is RKS's post-dispute selection of a law firm in Oklahoma to handle its dispute with TII. Of course, there is no shortage of law firms in California whom RKS can retain to litigate RKS's claims in its (and TII's) home state.[2]

Having to defend this case in Oklahoma would cause great inconvenience and expense to TII, which is a company that only has seven employees and is headquartered in the desert just east of Los Angeles, California. It also would put the numerous *non*-party witnesses who live and work in California outside of this Court's subpoena power, making them unavailable to testify live and in person for TII at trial. That would result in substantive prejudice to TII, something that might suit RKS just fine, but would be patently unfair.

For the convenience of the parties, for the convenience and availability of the many non-parties, for fairness to TII, and in the interest of justice, this Court should transfer this action to

---

[1] The parties executed the contract (hereafter, the "agreement") on March 5, 2002 and then amended it in writing, twice, on October 27, 2003 and July 21, 2004. *See* Exhibits 1, 2 and 3 to the Complaint.
[2] Indeed, as the evidence cited herein shows, RKS has attorneys in RKS's home state, and as recently as this year has been litigating there (in a claim that RKS filed there, ironically, for legal malpractice).

1

the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). *No one who is relevant to the case is located in Oklahoma* (except for the law firm which RKS hired to address this dispute with TII and to litigate it here, thousands of miles from both parties' home state).

TII respectfully submits that there is an overwhelming basis to transfer this action to California and that, if the Court so agrees and grants this motion, then there is yet another parallel benefit to all involved: the Court would not need to rule on the *other* motion of TII, which motion raises the issue of Oklahoma's personal jurisdiction (or lack thereof) over TII.

*That* motion would be rendered moot by an Order granting *this* motion.[3]

## II.   BACKGROUND FACTS.

### A.   Both Parties Are From California.

RKS is a California corporation with its principal place of business in a suburb of Los Angeles, California in a city called Thousand Oaks. (Complaint, ¶ 5.) TII is Delaware corporation which also has its principal place of business in the vicinity of Los Angeles, California, in a city called La Quinta. (Complaint, ¶ 5; Declaration of Joshua Chandler ("Chandler Decl.") attached as Exhibit "1," at ¶ 3.) TII has no offices in Oklahoma, has no employees in Oklahoma, has no bank accounts or other property in Oklahoma, has no telephone number in Oklahoma, does not itself sell any products to any customers in Oklahoma, and does not avail itself of the privilege of transacting business in Oklahoma. (Chandler Decl., at ¶ 3.)

### B.   The Agreement Was Negotiated, Signed, and Performed in California.

The parties' agreement was negotiated, signed, and performed by people who worked for

---

[3] TII's other motion is under F. R. Civ. P. 12(B)(2) and, as noted, raises the issue of Oklahoma's lack of personal jurisdiction over TII. TII does not do business in Oklahoma, has no employees or agents in Oklahoma, has no office or other address in Oklahoma, has no bank account, telephone number, or property in Oklahoma, had no interactions with anyone in Oklahoma relating to RKS (except for the attorney RKS hired in Oklahoma to handle RKS's dispute with TII and then file this lawsuit versus TII) and has not purposefully availed itself of the privilege of conducting business in Oklahoma. This also results in venue being improper. 28 U.S.C. §§ 1406(a) and 1391(b)(2). This is not the District in which "a substantial part of the events or omissions on which the claim is based occurred, or a substantial party of the property subject to the action is situated." *See* 28 U.S.C. §§ 1391(a)(2) and (b)(2).

TII and RKS, and agents assisting them, in California.  (Chandler Decl., ¶¶ 5-17.)

The agreement which was signed on March 5, 2002 is attached as Exhibit 1 to the Complaint.  (Complaint, ¶ 7.)  Its two amendments, which were signed on October 27, 2003 and on July 21, 2004, are attached as Exhibits 2 and 3 to the Complaint.  (Id.)  All of these documents were negotiated, signed, and performed by people who were and still are living and working in Southern California.  (Chandler Decl., ¶¶ 5-17.)

The terms and conditions of the agreement and of its amendments (the intent, scope, and meaning of which are going to be key subjects for the Court to evaluate and rule upon in this case, by applying California principles of contract interpretation) were all negotiated by people in California.  They include RKS's personnel such as Ravi Sawhney and Paul Janowski, both of whom were then (and still are) California residents; they include RKS's outside attorneys such as John Hendrickson and Diane Becker, both of whom were then (and still are) California residents; they include TII employees and in-house attorneys such as Kandy Allen, Jacqueline Bailey, Renee Benjamin, and Mark Taylor, as well as employees of two TII-affiliates which worked on this project, such as Andy Tobias and Denise Graham, all of whom were then (and still are) California residents.  (Chandler Decl., ¶¶ 5-7, 11, 13a.-f, 17.)

Likewise, for over three years after the signing of the agreement, the parties had a business relationship with regard to the product, i.e., the Q barbeque, and month after month, year after year, communicated with each other and performed the terms of their agreement from each of their respective offices in California, using their respective employees in California.  It was a relationship based in California, with TII people located in La Quinta, California and TII-affiliates located in Santa Monica, California communicating with RKS people located in Thousands Oaks, California.  (Chandler Decl., ¶¶ 5, 10-11, 13a.-s., 17.)

At all times in California, and never in Oklahoma, the parties regularly communicated regarding the development, manufacturing, marketing, and sale of the product, regarding the product's infomercials, regarding the revenues that TII was generating and the royalties that were due to RKS, regarding further "Q" barbeques, and regarding the patent, trademark, and other

intellectual property rights they could assert with regard thereto.  Even when RKS audited TII's books, it did so using an auditing firm in California, auditing the books in California.  (Chandler Decl., ¶¶ 13k and 17.)  Every single one of the party and non-party people who worked together during the course of the parties' relationship were, and to this day remain, in California, with not a single one in Oklahoma except for the law firm that RKS hired to handle its dispute.  These people, who likely will be called as witnesses in this case, include, for example:  Ravi Sawney, Thomas Kaltenecker, Miriam Linville, Randy Gollard, Kurt Botsai, and Paul Janowski of RKS, who had communications with TII and with relevant third parties during the parties' contractual relationship; Kandy Lee Allen, Renee Benjamin, and Denise DuBarry-Hay, who were then employed by TII and had communications with RKS and with relevant third parties during the parties' contractual relationship, but now are non-parties that will require a subpoena to attend trial; Jacqueline Bailey, Chris Zanesco, Mark Taylor, Joshua Chandler, and Bill Hay of TII, each of whom had communications with RKS or its representatives as well as relevant third parties during the parties' relationship; Matthew Hurewitz and others at his audit firm such as David Newberg and Cedar Boschan, who served as RKS's auditors and audited the books of, and had relevant communications with, TII; John Hendrickson and Diane Becker, who served as RKS's attorneys and had key communications with TII's in-house attorneys prior to the agreement and then during the parties' relationship, as issues arose; and Scott Kelley and other attorneys from his intellectual property law firm, such as Aaron Borrowman, who had relevant communications with TII, with RKS, and with relevant third parties during the parties' relationship, regarding the trademark issues and Weber issues raised in the Complaint.  (Chandler Decl., ¶¶ 13a.–s. and 17.)

### C.   The Lawsuit Is Based On TII's Alleged Acts Or Omissions In California.

The Complaint sets forth three alleged wrongs by TII.  All occurred within California.

First, RKS alleges that TII was required by the parties' contract to register a trademark (a trademark that RKS incorrectly defines, in its Complaint, as "the mark pronounced 'Q'") in the name of RKS, but that, after the execution of the agreement, TII's attorney "mistakenly … identified Thane rather than RKS as applicant for the mark pronounced 'Q.'"  (Complaint, at

4

¶ 8.)[4]  Forgetting the fact that (for legal reasons that were explained to RKS at the time) TII's trademark filing was *not* for "the mark pronounced 'Q'" (as RKS claims in the Complaint) but was for an *abstract logo* derived from the letter "Q"; and forgetting the fact that RKS knew TII had filed for this logo in its own name (and it was public record); it is undisputed that the attorney who did this for TII was Scott Kelley in Los Angeles.  (Chandler Decl., ¶ 13g.)

Thus, RKS's claim with regard to the "Mistake In Trademark Application" (First Claim For Relief) is based on the conduct of TII, in California, using an attorney in California, with (as TII alleges) actual knowledge and yet total inaction by RKS, in California, in those years.[5]

Second, the Complaint alleges that TII and Mr. Kelley should not have dismissed an opposition proceeding they had filed at the U.S. Patent and Trademark Office against Weber-Stephen Products ("Weber"), which had sought to register the letter "Q" as a word mark.

Despite the fact that TII's settlement with Weber resulted in Weber *dropping* its USPTO application to register the letter "Q," which is something that RKS should be delighted about, RKS accuses TII of committing "Contributory Trademark Infringement" and "Violation of Lanham Act" as a result of settling with Weber.  (*See* Second and Third Claims for Relief).

Forgetting the fact that RKS knew all about the opposition proceeding (and that it was public record) without ever asking to be a party to it; forgetting the fact that RKS did not sue Weber for trademark infringement even though Weber was openly advertising barbeques using a "Q" mark; forgetting the fact that RKS understood that the only trademark right TII likely could

---

[4] TII believes it will be *critical* to have live testimony from Mr. Kelley and others from his law firm at the trial of this action, to help TII defend itself against the allegations that RKS is making herein, and believes that RKS's litigation counsel also must know that.  This may explain RKS's litigation counsel's decision to file this action in Oklahoma, making it impossible for TII to use a trial subpoena to require third party witnesses such as the busy attorneys at Kelly, Bauersfeld, Lowry & Kelley in Los Angeles to drop everything and fly across the country to testify at trial on matters that do not concern them now.

[5] During the course of the parties' relationship Mr. Kelley not only filed trademark application papers for TII but also filed patents for RKS relating to the product in question and had communications with the parties on a number of subjects that will be very important to TII's defense, including TII's filing of a trademark registration application for an abstract "Q" logo or design, rather than for a word mark for the letter "Q," the reasons why Mr. Kelley did not apply for RKS to register the letter "Q" as a word mark as originally stated in the parties' contract, and the issues involved in the TII-Weber dispute that TII prosecuted at the USPTO and then settled with Mr. Kelley as counsel.  (Chandler Decl., at ¶ 13g.)

protect was whatever rights it had to the abstract logo it had registered, derived from the letter "Q," and not, as RKS now contends, a right to "the mark pronounced 'Q'" (the letter "Q" being far too commonly, and previously, used by others for barbeques or "BBQ's"); and forgetting the fact that the settlement succeeded in having Weber drop its application for a "Q" word mark, so RKS should be delighted with it, it is undisputed that the attorneys who handled the USPTO action and the Weber settlement were Scott Kelley, Aaron Borrowman, and others from the Kelly Bauersfeld law firm in Los Angeles.  (Chandler Decl., ¶ 13g.)

Therefore, RKS's claims for "Contributory Trademark Infringement" and "Violation of Lanham Act" (RKS's Second and Third Claims for Relief) are based on the conduct of TII, in California, using attorneys, in California, with (as TII alleges) actual knowledge and yet total inaction on the part of RKS, in California, causing alleged injury to RKS, in California.  There is no link to Oklahoma.  Indeed, not even Weber (whom, even now,  RKS *still* has not sued for trademark infringement) is located in Oklahoma:  it is in Illinois.  (Complaint, at ¶10.)

Third, and finally, the Complaint alleges that TII owes RKS money under the contract and that it has failed to provide required accountings to RKS (Fourth Claim for Relief).

Specifically, RKS alleges that "contrary to the provisions of section 5.3 of the first amendment to the [agreement], Thane halted its monthly advance on royalty payments to RKS" and that although "RKS requested production reports for products covered by the [agreement], said production reports have not been provided."  (Complaint, ¶¶ 15-16.)

However, everything relating to this claim, too, occurred in California, with people and documents that were and still are in California.  Nothing relevant occurred in Oklahoma.

Under the express terms of the agreement (Paragraph 14 of Exh. 1 to the Complaint) the royalty payments TII was to send to RKS went from TII in California to RKS in California.  TII's allegedly wrongful failure to pay those royalties occurred in California.  TII's books and records, from which the allegedly withheld royalty-related reports would be made, are all in California.  The people at TII who were in charge of those books and records, and thus who calculated the royalties that were or were not due to RKS, are all in California.  RKS and the

6

auditor that it used are both in California.  (Chandler Decl., ¶¶ 13j.–k., o, and s.)

**D.**     **The Location of the Witnesses and Documents is California.**

It is of course premature for TII to lay out all of the facts that pertain to this case, but in the Declaration of Joshua Chandler which TII is filing herewith, TII is presenting sufficient evidence to the Court, for the present purpose, which demonstrates that almost all, *if not all*, of the party witnesses, and almost all, *if not all*, all of the *non*-party witnesses, live and work in California, not in Oklahoma.  (Chandler Decl., at ¶¶ 13 and 17, and Exhibit "A".)  As set forth in the Chandler Declaration, there are at least twenty-five (25) such witnesses, including a number of key *non*-parties who are needed by TII but who cannot be compelled to travel from California to Oklahoma for trial.

The Chandler Declaration also confirms what should be obvious already:  that TII, a company with only seven (7) employees, located in the desert two hours east of Los Angeles, would be severely inconvenienced and prejudiced, and would have its operations seriously disrupted, if it were to have to defend itself in Oklahoma, far away from where its witnesses and documents are located (and from where RKS's witnesses and documents are located).

Given the law which is cited, *infra*, and given the lack of the parties', the non-parties', and the case's connection to Oklahoma, the public and private interest factors favor a transfer to the Central District of California where RKS, TII, and all of the relevant witnesses reside.

**III.**     **THE ACTION SHOULD BE TRANSFERRED UNDER 28 U.S.C. § 1404(A).**

This action should be transferred to the Central District of California in order to avoid an unnecessary waste of time, energy, and money, to prevent significant inconvenience as well as unfairness to the parties and to witnesses, and to best serve the interests of justice.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

"Congress enacted 28 U.S.C. 1404(a) in 1948 as 'federal housekeeping measure,' allowing easy change of venue within a unified federal system."  Chrysler Credit Corp. v.

Country Chrysler, Inc., 928 F. 2d 1509, 1515 (10th Cir. 1991).

The purpose of Section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." Jacobs v. Lancaster, 526 F. Supp. 767, 769 (N.D. Okla. 1991) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)).

Section 1404(a) gives district courts broad discretion to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness.  Chrysler Credit, supra, 928 F. 2d at 1516.  "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." Id., at 1515.

"Section 1404(a) is intended to place the discretion in the district court to adjudicate motions for transfer according to an 'individualized, case by case consideration of convenience and fairness.'" Watkins v. Crescent, LLC, 314 F. Supp. 2d 1156, 1161 (N.D. Okla. 2004).

The Tenth Circuit has outlined a number of factors to consider:  (1) the degree, *if any*, to which weight and respect should be given to the plaintiffs choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and, (9) all other considerations of a practical nature that make a trial easy, expeditious, and economical.[6]  Chrysler Credit, supra, 928 F. 2d at 1516.

The balance of these factors strongly favors having this case adjudicated in California.

With regard to the first factor, it is clear that *no* weight or respect should be given to the plaintiff's choice of forum, as the plaintiff here is a California corporation, with California as its

---

[6] There is not enough information at TII's current disposal to discuss three of the factors:  factor no. 4, questions as to the enforceability of a judgment, factor no. 6, the difficulties that may arise from congested dockets, and factor no. 7, the possibility of questions arising in the area of conflict of laws.

principal place of business, doing business with TII in California under a contract with a California choice of law provision which was negotiated, executed, performed, and allegedly breached in California, allegedly causing injury to RKS in California.  The only time when a court should give weight or respect to a plaintiff's choice of forum is "*when that forum is the plaintiff's home.*"  <u>Keating v. Whitmore Mfg. Co.</u>, 981 F. Supp. 890, 892 (E.D. Pa. 1997) (emphasis added).  No such weight or respect is given when, as here, "*none of the operative facts occurred in the selected forum.*" <u>Lindloff v. Schenectady Int'l</u>, 950 F. Supp. 183, 185 (E.D. Tex. 1996) (emphasis added).  Oklahoma is the home of neither party in this case, and, as set forth, *supra*, no operative facts occurred in Oklahoma.  The reason the case was filed here is that RKS now has been and is using an attorney in Oklahoma, to handle its dispute with TII.

Courts repeatedly have held that a plaintiff's choice of forum is given little or no respect when there has been an absence of significant contact between the plaintiff, or the transactions or conduct alleged by the plaintiff, and the forum state the plaintiff selected.  <u>Jacobs</u>, <u>supra</u>, 526 F. Supp. at 769; <u>National Sur. Corp. v. Robert M. Barton Corp.</u>, 484 F. Supp. 222, 224 (W.D. Okla. 1979); <u>Pope v. Missouri Pac. R. R. Co.</u>, 446 F. Supp. 447, 450 (W.D. Okla. 1978); <u>Walter E. Heller & Co. v. Jaimes Godbe Co.</u>, 601 F. Supp. 319, 321 (N.D. Ill. 1984) (when the choice of forum lacks "any significant connection" to the underlying claim, it is not given weight and just becomes one of the many factors a court considers).

RKS's claims all arise from its failed California-based contractual relationship with TII. The agreement between TII and RKS, and both of its amendments, were negotiated by RKS, with its offices in Thousand Oaks, California, and TII, with its offices in La Quinta, California, with the help of the parties' respective counsel, also in California.  (Chandler Decl., ¶¶ 6-11.) The acts or omissions of TII which, according to RKS, give rise to the claims of RKS, concern (1) TII's allegedly improper handling of a "Q" trademark pursuant to the terms of the parties' agreement, through a TII trademark lawyer located in California, (2) TII's allegedly improper dismissal of a USPTO proceeding and settlement with the Weber company involved in that proceeding, through the same trademark lawyer in California, and (3) TII's failure to pay certain

monies to RKS, in California, based on books and records of TII located in California and already audited once by RKS and its auditor in California.  (Chandler Decl., ¶¶ 5-13.)  The Complaint does not allege any relevant acts in Oklahoma, for the simple reason that no such acts occurred.  This Court should give no weight to this plaintiff's choice of forum.

"[T]he place in which significant contacts between the parties occurred should be considered as the appropriate forum for trial."  Jacobs, supra, 526 F. Supp. at 770.  In Jacobs, the District Court for the Western District of Oklahoma held that the interest of justice favored a Section 1404(a) transfer to the district where most, if not all, of the relevant transactions occurred.  Id., at 526 F. Supp. at 769-70 (the convenience of the parties and witnesses and the interest of justice required transfer to Idaho, where the plaintiff seller had contacted the defendant buyers, where the contract had been prepared and entered into, and where two of the three defendants resided).  See also, Van Dusen, supra, 376 U.S. at 628 ("the most convenient forum is frequently the place where the cause of action arose"); McAlister v. General American Life Ins. Co., 516 F. Supp. 919, 922 (W.D. Okla. 1980) (the place in which significant contacts between the parties occurred should be considered the appropriate forum); Bussey v. Safeway Stores, Inc., 437 F. Supp. 41, 43 (E.D. Okla. 1977) (granting motion to transfer stating "it seems logical that it would be more convenient for the named parties if this action transferred to [the district in which] both parties reside").

There can be no reasonable argument by RKS to rebut the inevitable conclusion that the second, third, fifth, eighth, and ninth factors considered by courts in the Tenth Circuit (*i.e.,* the accessibility of witnesses and other sources of proof, the availability of compulsory process to ensure the attendance of witnesses at trial, the cost of making the necessary proof, the relative advantages and obstacles to a fair trial, the advantages of having a local court determine questions of local law, and all other considerations of a practical nature that make a trial easy, expeditious, and economical) all favor the transfer of this action to California.

Even at this early stage in the case, TII has already identified twenty-five (25) people who are needed, live and at trial, for TII to best defend itself against RKS's claims.  *Not one of them*

10

*is in Oklahoma*.  They are all in California.  (Chandler Decl., at ¶¶ 12-13.)  It is not simply a case of TII and RKS having their employee witnesses in California, and thus needing to take them away from their jobs and homes for the trial of this case.  It also is a case of TII needing to call *non*-parties to testify at trial to help TII defend against the claims or credibility of RKS.  There are key *non*-parties who are needed for trial, *none of whom* live or work in Oklahoma.  They include:  the trademark lawyer that TII used at the time, Mr. Kelley, who handled the "Q" trademark application matter and the Weber USPTO proceeding and settlement (which are central to RKS's claims, as pleaded) along with one of his law partners Mr. Borrowman;  the former lead in-house counsel for TII, Ms. Allen, who had significant interactions with RKS or its representatives relative to the negotiation of the agreement and its amendments as well as working on the Weber settlement; a second former in-house counsel for TII, Ms. Benjamin, who was involved in the patent and trademark issues between the parties; John Hendrickson and Diane Becker, the two Los Angeles attorneys who represented RKS then and worked on negotiating the agreement or its amendments and on other issues; and Matthew Hurewitz and others in his audit firm such as David Newberg, who represented RKS and audited TII.[7]  These non-party witnesses and their records are all in California.  (Chandler Decl., at ¶¶ 12-17).

RKS will have a very unfair advantage in this case if the case is in Oklahoma.  RKS will have made it difficult, highly costly, or impossible for TII to obtain the live witness testimony it needs, at trial, from the people whom TII considers to be important for its defense, including, for example, Messrs. Kelley and Borrowman and others from their law firm referenced obliquely in the Complaint, former TII employees such as Ms. Allen, Ms. Benjamin, and Ms. Dubarry-Hay, RKS lawyers Mr. Hendrickson and Ms. Becker, RKS auditors Messrs. Hurewitz and Newberg, as well as key witnesses from companies affiliated with TII, such as Mr. Tobias and Ms. Graham who dealt with RKS and TII on this project, all of whom reside in California.  (Chandler Decl.,

---

[7] It also stands to reason that some of the RKS employees who worked with TII at the time may now be former employees of RKS, and that RKS's attorneys and auditors may no longer work for it, thus needing a subpoena for TII to bring them to trial (but, without discovery, TII does not yet know).

¶¶ 18-23.)

The foregoing problem is in addition to the unnecessary burden and out of pocket cost and legal expense of bringing *both* parties' employee-witnesses from California to Oklahoma. From RKS, as far as TII can tell at this time, that would include Mr. Sawney, Mr. Kaltenecker, Ms. Linville, Mr. Janowski, Mr. Gollard, and others, all of whom live in California. (Chandler Decl., ¶ 13.)   From TII, as far as TII can tell now, it would include Mr. Chandler, Mr. Hay, Ms. Bailey, Mr. Taylor, and Mr. Zanesco, none of whom has any connection to Oklahoma. (Chandler Decl., ¶ 13.)   That is in addition to the three, Ms. Allen, Ms. Benjamin, and Ms. Dubarry-Hay, who used to work for TII but are now third parties, and the two, Mr. Tobias and Ms. Graham, who work for companies affiliated with TII.   Others may be needed, too, none of which are in Oklahoma.  Forcing the relevant witnesses who will testify in this action (as to those who can be forced) to travel to Oklahoma is simply inefficient and unnecessary, considering where the relevant acts and omissions took place, and considering where both parties reside. Furthermore, the location of the books and records held by the parties and by those retained by or affiliated by them (such as their former employees, their attorneys, their auditors, and others) weigh in favor of a transfer.  (Chandler Decl., at ¶¶ 15-17.)  In <u>re Horseshoe Entertainment,</u> <u>Inc.</u> 305 F. 3d 354, 358 (5th Cir. 2002), the Court held that the location of the books and records weighed in favor of transfer under Section 1404(a), and in this case it is clear that the parties and non-parties have their key records in California.

It is hard to argue with the conclusion that transferring this case to the Central District of California would serve the "interest of justice" under section 1404(a).   Under this criterion, courts give consideration to "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; and all other practical problems that make trial of a case easy, expeditious and inexpensive." <u>Watkins</u>, <u>supra</u>, 314 F.Supp. 2d at 116; <u>Jacobs</u>, 526 F.Supp. at 770.  For example, in <u>National Sur.</u>, <u>supra</u>, 484 F. Supp. at 225-26, in deciding a Section 1404(a) motion to transfer in a case involving an indemnity agreement, the court observed that "it would seem that

Defendants would be extremely inconvenienced if they were required to defend this action in this forum [Oklahoma].   The issues presented are primarily factual in nature, requiring documentation and witnesses which are located in Texas. The cost of defending this action in this district would therefore unduly increase Defendants' expenses, while transfer to the transferee district would only minimally increase those of Plaintiff."

Here, the dispute arose from conduct in California, not in Oklahoma.  Moreover, the significant witnesses, documents, and the relevant events are all located in and occurred in California.  All of these factors demonstrate that access to the sources of proof is much more convenient in California.  Trying this case in Oklahoma would cost significantly more than it would in California because of the locality of the pertinent events, documents, and witnesses. (Chandler Decl., ¶¶ 18-23.)  All of the relevant inquiries indicate that the interest of justice is better served by litigating this case in the Central District of California, where both sides have their home offices, have their witnesses, and have their documents.  Frazier v. Commercial Credit Equipment Corp., 755 F. Supp. 163 (S.D. Miss. 1991) ("the 'interest of justice' factor of Section 1404(a) may, in itself, be determinative of the decision to allow a transfer, even where the convenience of the parties and witnesses would call for a different result.").

It also should be remembered that Paragraph 12 of the agreement states:  "Controlling Law.  The laws of the State of California will govern the interpretation of this Agreement and the rights and obligations of the parties to it without regard to conflicts of law principles."

This is yet another factor favoring California.  Van Dusen, supra, 376 U.S. at 645.

As to "questions as to enforceability," Chrysler Credit, supra, 928 F. 2d at 1516, while there is not enough information to weigh the factor, it would seem that the Central District of California would be the preferred forum, as any judgment in favor of RKS or in favor of TII resulting from this action would be easily enforced in California where each company has its offices and its assets.  Also, if injunctive relief is sought, it is important to consider whether a court that is "closer to the action" is better able to monitor compliance with any injunction.  Law Bulletin Pub. Co. v. LRP Publications, Inc., 992 F. Supp. 1014, 1020-21 (N.D. Ill. 1998).

The fact cannot be over-emphasized that, in ordering this action transferred to California pursuant to Section 1404(a), this Court would not merely be shifting the inconvenience from one party to the other.  See, ROC, Inc. v. Progress Drillers Inc., 481 F. Supp. 147, 152 (W.D. Okla. 1979) (when the transfer would merely shift the inconvenience from one party to the other, the motion for change of venue should be denied).  RKS is a company in Thousand Oaks, California with its personnel in, and with extensive dealings in, California.  RKS and TII transacted the business that gave rise to this action in the Central District of California.  If anything, transferring the case to California would favor the witnesses of RKS, whose lives would be intruded upon by having to gather documents in California and appear for trial thousands of miles from their homes and work,  It surely would not unduly inconvenience RKS to have the case in California.  TII's motion to transfer simply evidences its sincere and well-reasoned desire to litigate the case in the most convenient, most inexpensive, and most appropriate forum, the forum where the witnesses and documents reside.  See, Scheidt v. Klein, 956 F. 2d 963, 965 (10th Cir. 1992) (question on Section 1404(a) transfer is whether the balance of factors indicates that the proposed transferee district is the less expensive and more convenient forum for litigation).  TII is not asking for relief that would be unfair to RKS; it is asking for relief *that would equalize things*.

Finally, it must be noted that there would be no jurisdictional problem, in transferring this case to California.  Section 1404(a) does not allow a court to transfer a case to a district that lacks personal jurisdiction over the defendant, even if the defendant consents to suit.  See, Hoffman v. Blaski, 363 U.S. 335, 336-37 (1960); Morris v. Peterson, 759 F. 2d 809, 812 (10th Cir. 1985).  Here, a California court clearly would have jurisdiction over TII and RKS. This is an action that might "might have been brought" in the first instance in the transferee court, a fact that is relevant under 28 U.S.C. § 1404(a).  Venue in Southern California would be proper, as it is the location where the majority of the witnesses are located.  Northwest Animal Hosp., Inc. v. Earnhardt, 452 F. Supp. 191, 194 (W.D. Okla. 1977).  In addition, venue would be proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise

14

to the claim occurred within the Central District of California.

## IV.   <u>CONCLUSION.</u>

For the reasons stated above, in order to convenience the parties and witnesses and to promote the interest of justice, this action should be heard in California.   TII, accordingly, respectfully requests that this Court transfer this action to the United States District Court for the Central District of California under 28 U.S.C. § 1404(a).

Respectfully submitted this **9th** day of **August, 2006.**


*s/ Charles L. McLawhorn, III*
Geoffrey M. Gold, Calif. Bar #142625
   (Admitted *Pro Hac Vice*)
Gregory J. Sater, Calif. Bar #157486
   (Admitted *Pro Hac Vice*)
**RUTTER, HOBBS & DAVIDOFF**
1901 Avenue of the Stars, Suite 1700
Los Angeles, CA  90067
310/286-1700
310/286-1728 (Fax)
ggold@rutterhobbs.com
gsater@rutterhobbs.com

- and -

Robert W. Dace, OBA #10263
Charles L. McLawhorn, III, OBA #19523
**MCAFEE & TAFT**
A Professional Corporation
Tenth Floor, Two Leadership Square
211 N. Robinson Avenue
Oklahoma City, OK  73102-7103
405/235-9621
405/235-0439 (Fax)
bob.dace@mcafeetaft.com
chad.mclawhorn@mcafeetaft.com

**ATTORNEYS FOR DEFENDANT
THANE INTERNATIONAL, INC**

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this **9th** day of **August, 2006**, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the clerk will transmit a Notice of Electronic Filing to the following ECF registrants:

Greg A. Castro
Daniel P. Dooley
Fellers Snider Blankenship Bailey & Tippens
100 N. Broadway, Suite 1700
Oklahoma City, OK  73102-8820
gcastro@fellerssnider.com
ddooley@fellerssnider.com

*s/ Charles L. McLawhorn, III*