IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT COURT OF OKLAHOMA

| | |
|---|---|
| RKS DESIGN INTERNATIONAL,<br>a California corporation,<br><br>          Plaintiff,<br><br>vs.<br><br>THANE INTERNATIONAL, INC.,<br>a Delaware corporation,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. CIV-06-650-M<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
<u>DEFENDANT'S MOTIONS TO TRANSFER AND BRIEF IN SUPPORT</u>**

 

Greg A. Castro (OBA No. 11787)
Dan Dooley (OBA No. 18551)
FELLERS, SNIDER, BLANKENSHIP,
  BAILEY & TIPPENS
100 North Broadway, Suite 1700
Oklahoma City, OK 73102-8820
Telephone:   (405) 232-0621
Facsimile:    (405) 232-9659
E-Mail:       gcastro@fellerssnider.com
              ddooley@fellerssnider.com

September 22, 2006          ATTORNEYS FOR PLAINTIFFS

# Table of Contents

Page

I. SUMMARY OF ARGUMENT ........................................... 1

II. FACTUAL BACKGROUND ............................................ 2

    A.    Basis for the Dispute. ........................................ 2

    B.    Thane and All of its Entities Advertise and Solicit Business in Oklahoma Through Infomercials and Websites. .................... 4

        1.    Thane, through its "Global Distribution" plan, including marketing through infomercials and websites, conducted and maintained business in Oklahoma. ..................... 4

        2.    Thane is responsible for the Infomercials on KOKH and KOCB and for the Internet Sales to Oklahoma Customers. ....... 5

III. ARGUMENT AND AUTHORITIES ...................................... 7

    A.    RKS' Choice of Venue is the Paramount Consideration. ............. 7

    B.    Thane Has Not Shown that the Accessibility of Witnesses, Documents, and Other Proof Will Be a Burden, or that Any of its Key Witnesses are Unwilling to Attend Trial in Oklahoma. ...... 9

    C.    The United States District Court for the Central District of California Has the Most Civil Cases of any District Court in the Nation. ........ 11

    D.    Transferring the Case to California Merely Shifts the Burdens Complained of by Thane to RKS. ............................. 12

CONCLUSION ........................................................ 13

CERTIFICATE OF SERVICE ............................................ 14

# Table of Authorities

## Cases                                                                    Page

*Chicago R.I. & P.R. v. Igoe*, 220 F.2d 299 (7th Cir. 1955) .............................. 8

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
928 F.2d 1509, 1515 (10th Cir. 1991) ...................................... 9, 11

*DiMark Marketing, Inc. v. Louisiana Health Service and Indemnity Company*,
913 F. Supp. 402, 408 (E.D. Pa. 1996) ........................................ 8

*Fletcher v. Southern Pacific Transp. Co.*, 648 F. Supp. 1400, 1404 (E.D. Tex. 1986) .......... 8

*Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923 (W.D. Mo. 1985) ....................... 7

*Josephson v. McGuire*, 121 F. Supp. 83, 84 (D.C. Mass. 1954) .......................... 8

*Keating v. Whitmore Mfg. Co.*, 981 F. Supp. 890, 892 (E.D. Pa. 1997) .................... 7

*Lands v. St. Louis Southwestern R.R. Co.*, 648 F. Supp. 322, 324 (E.D. Tex. 1986) .......... 8

*Lindloff v. Schenectady Int'l*, 950 F. Supp. 183 (E.D. Tex. 1996) ........................ 8

*Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 773-774 (E.D. Tex. 2000) ......... 8, 9

*Morgan v. Illinois Cent. R.R. Co.*, 161 F. Supp. 119, 120 (S.D. Tex. 1958) ................. 8

*Reed v. Fina Oil and Chemical Co.*, 995 F. Supp. 705, 714 (E.D. Tex. 1998) ............... 8

*ROC, Inc. v. Progress Drillers, Inc.*, 481 F. Supp. 147, 152 (W.D. Okla. 1979) .......... 10, 12

*Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) ............................... 10, 12

*Sovereign Bank, F.S.B. v. Rochester Community Sav. Bank*,
907 F. Supp. 123, 126 (E.D. Pa. 1995) ...................................... 7, 11

*Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*,
579 F.2d 561, 567 (10th Cir. 1978) ........................................... 9

*Weinstein v. Friedman*, 859 F. Supp. 786, 788 (E.D. Pa. 1994) .......................... 7

*Wm. A. Smith Contracting v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972) ....... 9

| Statutes | Page |
|---|---|
| 28 U.S.C. § 1404(a) | 1, 7, 11, 13 |
| 28 U.S.C. § 1406(a) | 1 |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTIONS TO TRANSFER AND BRIEF IN SUPPORT

Plaintiff, RKS Design International ("RKS") hereby responds and objects to Defendant's, Thane International, Inc. ("Thane"), Motion to Transfer under 28 U.S.C. § 1404(a) and Brief in Support.

### I. SUMMARY OF ARGUMENT

First and foremost, Section 1404(a) transfers must be distinguished from transfers carried out under 28 U.S.C. § 1406(a). In a 28 U.S.C. § 1404(a) Motion to Transfer, the court *may* grant the motion when the court finds that the interests of justice would be better served by transferring the case to another court, but both the transferee and transferor courts have proper venue. In a Section 1406(a) case, however, the court *must* transfer the case if and when the transferor court finds that it does not have proper venue. By filing a Section 1404(a) Motion to Transfer, Defendant concedes that this Court is a proper venue for this action.

Thane, due to its deliberate and continuous exploitation of the Oklahoma market, is subject to personal jurisdiction in Oklahoma, and it should also be required to defend suit here for several reasons. First, RKS, the *Plaintiff*, chose the forum of the United States District Court for the Western District of Oklahoma, and this consideration weighs more heavily than any other. Next, during the actual trial phase, Defendant can make no showing that compulsory process will be necessary or that any of its witnesses are unwilling to travel to Oklahoma. The accessibility of witnesses, documents, and other proof will not be a burden on Thane during the discovery phase since Defendant has retained California counsel who has the ability to depose any witnesses or

1

locate any other evidence located in California.[1] Third, the United States District Court for the Central District of California has perhaps the largest number of civil cases of any District Court in the Nation. The Western District of Oklahoma will be more likely to expeditiously resolve this litigation. Finally, Thane claims that RKS has no ties with Oklahoma. If this is the case, any disadvantages Thane will suffer by defending suit in Oklahoma will also be suffered by RKS. Transferring the venue to California, on the other hand, will do nothing but transfer the burden of litigation expenses to RKS, as it has not retained California counsel in this matter.

The Defendant aired infomercials on several different products on KOKH-Oklahoma City, Oklahoma and KOCB TV 34 in Oklahoma City, Oklahoma throughout, at the very least, four months in 2005 and 2006. Further, it conducts business with Oklahomans through its highly interactive website. In doing so, Thane has chosen to continuously and deliberately exploit the Oklahoma market, so it surely should be required to defend suit here.

## II. FACTUAL BACKGROUND

A.   **Basis for the Dispute.**

RKS is a licensing and marketing firm that owns an innovative portable grill technology and its associated mark, "Q." RKS has been using this mark since at least March 5, 2002. [Exhibit 1, *Complaint* at ¶ 6]. RKS and Thane entered into a *Production and Exclusive Marketing Agreement* ("the Agreement") on March 5, 2002, which was first amended on October 27, 2003, and again amended on July 21, 2004. [Exhibit 2, *Production and Exclusive Marketing Agreement*]. In accordance with Sections 1.1 and 5.1 of the Agreement, Thane, at its sole expense, was to apply for

---

[1] Thane has retained Geoffrey M. Gold and Gregory J. Sater of Rutter, Hobbs & Davidoff in Los Angeles, California to defend it in this action.

2

a trademark for the mark "Q" *in the name of RKS*. [*Id.*]. RKS believes that one of Thane's attorneys identified Thane, rather than RKS, as the owner of the mark, "Q." [Exhibit 1, *Complaint* at ¶ 8].

Since as early as July 11, 2003, Thane has used the "Q" mark to market RKS' licensed goods, through infomercials, websites and other advertising, and to distinguish these goods from any other portable grill technologies. Through this continued use of the "Q" mark, the mark has become a substantial and valuable asset to RKS. [*Id.* at ¶ 9].

Around April 13, 2004, Thane held out to Weber-Stephen Products Company ("Weber") that it held the legal rights as owners of the registered mark, "Q," and Thane subsequently entered into an agreement with Weber for simultaneous use of the "Q" mark ("Thane-Weber Agreement"). [*Id.* at ¶ 13]. Previous to this time, Weber filed an Intent to use Application for the Mark "Q," which was published for opposition on May 6, 2003. [Exhibit 3, *USPTO Notice of Publication*]. Thane subsequently filed a Notice of Opposition. [Exhibit 4, *USPTO Notice of Opposition*]. Pursuant to the Thane-Weber Agreement, Thane filed a Stipulated Withdrawal of Opposition, which served as the basis for Dismissal with Prejudice by the Trademark Trial and Appeal Board of the Opposition Proceedings between Thane and Weber. [Exhibit 5, *USPTO Stipulated Withdrawal of Opposition*]. By entering into such an agreement with Weber and withdrawing its opposition, Thane implied that Weber would not be infringing by using the "Q" mark, intentionally inducing Weber to infringe upon the mark owned by RKS. Weber has been using the "Q" mark in the promotion and sale of its barbeque grills, upon the belief that it was licensed to do so by Thane, since at least July 7, 2003. [Exhibit 1, *Complaint* at ¶ 14]. RKS has been harmed by Weber's use of the mark, and Thane is responsible.

Finally, pursuant to the Thane-RKS Agreement, specifically Section 5.3 of the First Amendment, Thane was required to pay a monthly advance on royalties to RKS. [Exhibit 6, *First Amendment to Exclusive Marketing Agreement*]. It has ceased such payments in breach of the Agreement. Further, Thane has failed to produce certain production reports that it was required to produce under Section 6.3 of the Agreement. [Exhibit 1, *Complaint* at ¶¶ 15-16].

### B. Thane and All of its Entities Advertise and Solicit Business in Oklahoma Through Infomercials and Websites.

#### 1. Thane, through its "Global Distribution" plan, including marketing through infomercials and websites, conducted and maintained business in Oklahoma.

According to Ravi Sawhney, President and Founder of RKS, Thane advertised the "Q" Grill through infomercials on KOKH-Oklahoma City, Oklahoma, on at least May 29, June 6, and June 26 in 2005. Thane also advertised the "Q" Grill through infomercials on KOCB TV 34 in Oklahoma City, Oklahoma, on at least February 27 and April 9 in 2006. At a minimum, each of these infomercials aired for approximately two and one-half minutes.

The five dates listed above refer only to infomercials on the "Q" Grill. Thane sells *at least* fifteen other products in the United States. [Exhibit 7, http://www.thaneinc.com/products.htm, last visited September 20, 2006]. Thane uses its "Global Distribution" plan to promote all of its products through infomercials and the Internet. "Thane has a unique business model that enables it to launch a product in 100 countries around the world in less than 100 days . [They] are able to accomplish this monumental marketing task through [their] network of subsidiaries, strategic partners and distributors around the world. [Thane] controls 250,000 half hour time slots and 500,000 short form slots globally and owns and operates 7 full time home shopping channels." [Exhibit 8, http://www.thaneinc.com/apply_wholesale.htm, last visited September 20, 2006]. Thane has clearly

availed itself of the privilege of doing business in Oklahoma and several other states through its mass marketing network and Internet sales, and it should be required to defend suit here.

Thane's website, *www.thaneinc.com*, displays its products and allows its customers to purchase any of them directly through its website. [Exhibit 7, http://www.thaneinc.com/products.htm, last visited September 20, 2006]. A United States customer will be directly linked to *Thane USA* at *www.thane.com* through *www.thaneinc.com*. Once the customer is linked to *www.thane.com*, he may purchase any of Thane's products through the website. [See Exhibit 9, *Thane.com Online Order Confirmation*]. "Thane's URLs are placed prominently within all of Thane's direct response TV programs, package inserts and product packaging." (http://www.thaneinc.com/services/internet.htm, last visited September 20, 2006). Not only does Thane use its website to sell its products, but it also uses its products and infomercials to promote its website. The circular nature of Thane's marketing strategy strengthens the inference that Thane takes all possible steps to conduct business and maintain contacts with customers in as many states as possible. Therefore, it is only fair that it should be required to defend suit in any forum, such as Oklahoma, in which suit is properly brought against it.

2.   **Thane is responsible for the Infomercials on KOKH and KOCB and for the Internet Sales to Oklahoma Customers.**

Thane asserts that its "affiliates" may have advertised in Oklahoma, but that it has never done so itself. This statement is completely without merit. Thane and RKS entered into a marketing agreement to achieve one goal: to market RKS' portable grill known as "Q." "Thane is a leading international marketing firm, successful in product development and acquisition, and infomercial and instructional video production, and desires *to produce the infomercial and market the product*

*worldwide.*" (Emphasis added). [Exhibit 2, *Production and Exclusive Marketing Agreement*, Recitals]. Whether Thane or one of its entities actually caused the infomercials to be aired in Oklahoma, the infomercials obviously aired pursuant to the Agreement between RKS and Thane. In fact, a version of the "Q" Grill infomercial can be found on Thane USA's website at http://www.thane.com/products/housewares/qgrill/video_new.php. Further, in Thane's Brief in Support of its Motion to Transfer, Thane states that the parties "...regularly communicated regarding the development, manufacturing, marketing, and sale of the product, *regarding the product's infomercials*, regarding the revenues that [Thane] was generating and the royalties that were due RKS..." (Emphasis added). [Exhibit 10, *Brief in Support of Thane's Motion to Transfer*, p. 3]. It is illogical to assume that Thane produced the infomercial but never caused it to be aired in its marketing efforts.

In summary, Thane has made concerted and purposeful efforts to exploit the Oklahoma market. It advertised and sold its products through Oklahoma television stations, it publicized its website in such advertisements, and it indiscriminately sold products directly from its website.[2] With such purposeful and extensive attempts to conduct and maintain business with Oklahoma, Thane

---

[2] Thane cannot contend that US customers must purchase through Thane USA rather than through Thane in order to evade the assertion of personal jurisdiction through its interactive website. The following statement appears at the bottom of the Thane Online Order Confirmation (for a purchase made through *www.thane.com*):

This website is brought to you by:
Thane International, Inc., La Quinta, CA 92253 USA
© 1997 Thane International, Inc. [privacy statement]

[See Exhibit 9, *Thane.com Online Order Confirmation*].

could, without doubt, expect to have to defend suit in the U.S. District Court for the Western District of Oklahoma.

### III. ARGUMENT AND AUTHORITIES

Venue is entirely appropriate in the Western District of Oklahoma and Defendant's *forum non conveniens* argument does not defeat the overriding factors courts consider under 28 U.S.C. § 1404(a).

#### A.    RKS' Choice of Venue is the Paramount Consideration.

Defendant fails to make the strong showing required to overcome the heavy burden necessary to obtain transfer. RKS chose to assert its claims in Oklahoma, and such a choice is the paramount consideration and should not be lightly disturbed. See *Sovereign Bank, F.S.B. v. Rochester Community Sav. Bank*, 907 F. Supp. 123, 126 (E.D. Pa. 1995) ("Moreover, we are mindful that the 'plaintiff's choice of forum is a paramount consideration which should not lightly be disturbed.'" (citing *Weinstein v. Friedman*, 859 F. Supp. 786, 788 (E.D. Pa. 1994))). *Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923 (W.D. Mo. 1985) (plaintiff's choice of proper forum is given great weight and should not be disturbed unless the movant makes a clear showing that the balance of interest weighs in favor of the movant). Defendant misleads the Court in its Brief in Support of its Motion to Transfer by stating, "[t]he only time when a court should give weight or respect to a plaintiff's choice of forum is '*when the forum is the plaintiff's home.*'" [Exhibit 10, *Thane's Brief in Support of Motion to Transfer*, p. 9]. Defendant cites *Keating v. Whitmore Mfg. Co.*, 981 F. Supp. 890, 892 (E.D. Pa. 1997) for this proposition, but what the case actually says is simply that the presumption for plaintiff's choice of forum is even stronger when it is the plaintiff's home. *Keating*, ("In determining whether venue exists in the instant case, we are further guided by the general

proposition that '[t]here is a strong presumption in favor of the plaintiff's choice of forum when that forum is the plaintiff's home.'" (citing *DiMark Marketing, Inc. v. Louisiana Health Service and Indemnity Company*, 913 F. Supp. 402, 408 (E.D. Pa. 1996))). Without the requisite showing from Defendant, Plaintiff's choice of venue in Oklahoma cannot and should not be disturbed.

Next, for the proposition that no weight or respect should be given to RKS' forum choice when "none of the operative facts occurred in the selected forum," Defendant cites *Lindloff v. Schenectady Int'l*, 950 F. Supp. 183 (E.D. Tex. 1996). [Exhibit 10, *Thane's Brief in Support of Motion to Transfer*, p. 9]. It is unclear whether Defendant failed to follow up on the acceptance of this proposition by other courts or whether it hoped no one would double check that this proposition has been called into doubt numerous times. See *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 773-774 (E.D. Tex. 2000).[3] The entire line of cases upon which Thane relies to support the

---

[3] The pertinent portion of the text in *Mohamed* reads as follows:

"Nonetheless, Judge Schell held that 'deference to plaintiff's choice of forum disappears when the lawsuit has no connection . . . to the venue chosen.' *Reed v. Fina Oil and Chemical Co.*, 995 F. Supp. 705, 714 (E.D. Tex. 1998) (citing *Lindloff*, 950 F. Supp. at 185; *Fletcher*, 648 F. Supp. at 1404; *Lands v. St. Louis Southwestern R.R. Co.*, 648 F. Supp. 322, 324 (E.D. Tex. 1986)). But closer examination of this authority reveals that it is, in fact, a proposition taken out of context from a district court opinion on a class action over forty years ago . . .

The *Reed* opinion cites *Lindloff v. Schenectady* which in turn cites *Fletcher v. Southern Pacific Transp. Co.*, 648 F. Supp. 1400, 1404 (E.D. Tex. 1986) and *Morgan v. Illinois Cent. R.R. Co.*, 161 F. Supp. 119, 120 (S.D. Tex. 1958). But neither *Fletcher* nor *Morgan* say that deference 'disappears,' but only that it is given 'minimal consideration.' *Id.* But even that is an incorrect statement of the law. *Morgan* gets it from a 1955 Seventh Circuit case, *Chicago R.I. & P.R. v. Igoe*, 220 F.2d 299 (7th Cir. 1955), which explicitly adopts the reasoning of *Josephson v. McGuire*, 121 F. Supp. 83, 84 (D.C. Mass. 1954), which held (without citation to authority) that the plaintiff's choice of forum was entitled to only minimal value when (1) the conduct occurred elsewhere and (2) 'when the plaintiff sues as a representative of a large class of shareholders who presumably are scattered

proposition that RKS' choice of forum should be given little or no weight rely on or can be traced back to the line of incorrect holdings expounded in *Mohamed*. [See n. 2, *supra*]. Any proposition suggesting that Plaintiff's choice of forum should be given anything less than great deference is simply incorrect. It is clear that the case should remain in RKS' choice of the Western District of Oklahoma, and Thane has not met its heavy burden to overcome the paramount consideration given to such choice.

**B.     Thane Has Not Shown that the Accessibility of Witnesses, Documents, and Other Proof Will Be a Burden, or that Any of its Key Witnesses are Unwilling to Attend Trial in Oklahoma.**

"The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991) (citing *Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978); *Wm. A. Smith Contracting v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972)). Defendant lists numerous witnesses, but it has not shown either (1) that any of them will, in fact, be material or indispensable to their defense (2) that any of these witnesses are unable to come to Oklahoma, (3) that deposition testimony will be inadequate, or (4) that the use of compulsory process will be necessary.

---

> throughout the country and are in number of persons and in number of shares held not shown to be located principally in this State, nor anxious to have litigation heard in this State.' *Id.* **So *Igoe*, the genesis of this 'minimal' or 'disappearing' deference proposition--itself vaporlaw--did not even accurately restate the law it claimed it was adopting.** Finally, with the exception of *Igoe*, no appellate court has ever sanctioned the contention that deference to the plaintiff's choice of forum 'disappears'--under any circumstances. (Emphasis added).

*Mohamed*, 90 F. Supp. 2d at 773-774.

In *Scheidt v. Klein*, the defendant argued that Florida was the proper forum for the case at issue, stating that the majority of contemplated witnesses resided there, that the pertinent documentary evidence was located primarily in Florida, that the conduct complained of in the suit occurred in Florida, that Florida law applied, and that, for all these reasons, litigation would be less expensive and more convenient in Florida. *Scheidt*, 956 F.2d 963, 965 (10th Cir. 1992). The court rejected the defendant's arguments for transfer. First, the court found that he had failed to demonstrate the "requisite inconvenience to his witnesses," in that he had failed to submit anything to indicate the quality or materiality of the testimony of said witnesses, or that any of the witnesses were unwilling to come to Oklahoma for trial, or that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary. *Id.* at 966. Similarly, the court found the defendant's "conclusory averment regarding the boxes of (unidentified, undescribed) documents existing relating to the instant cause of action" (which were located in Florida) to be unconvincing, considering the relative ease and low cost of sifting through the documents in Florida and sending the probative ones to Oklahoma for trial. *Id.* Significantly, the court noted that "[u]ndoubtedly, [d]efendant was inconvenienced somewhat by trial of the action in Oklahoma, as Plaintiffs would have been had the case been transferred to Florida. *Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue."* *Id.* (emphasis added); see also *ROC, Inc. v. Progress Drillers, Inc.*, 481 F. Supp. 147, 152 (W.D. Okla. 1979).

In its brief, Thane has listed several witnesses that it claims will be imperative to its defense. With the exception of Scott Kelley,[4] Thane does not disclose any evidence regarding the materiality and quality of its witnesses; it simply lists every individual that *may* have information regarding the dispute between it and RKS. Further, Thane has not delineated evidence that *any* of its potential witnesses are unable, or even unwilling, to travel to Oklahoma. Thane would not suffer any inconvenience during the discovery phase if, as it insists, all witnesses and pertinent documents for both sides are, in fact, located in California. Thane has retained California counsel for this matter, and there is no apparent reason why its California counsel cannot conduct all depositions, document productions, or other fact-finding activities in California. Its Oklahoma counsel can likewise conduct those that occur in Oklahoma.

Defendant in this matter is under a heavy burden to show that "the balance of convenience and justice weighs convincingly in favor of transfer." *Sovereign Bank*, 907 F. Supp. at 126. Defendant has wholly failed to meet this burden, offering nothing but conclusory statements that it would be inconvenient for it to travel from California, without a showing that witnesses will be unable to travel to Oklahoma.

### C.  The United States District Court for the Central District of California Has the Most Civil Cases of any District Court in the Nation.

The "difficulties that may arise from congested dockets" is one of the factors that the court may consider when deciding whether to grant a motion to transfer under Section 1404(a). *Chrysler*

---

[4] Mr. Kelley is an attorney at Kelley Bauersfeld Law Firm in Los Angeles, California. [Exhibit 10, *Thane's Brief in Support of Motion to Transfer*, p. 6]. In its Brief, Thane emphasizes the fact that RKS will assuredly need to call him. [*Id.* at pp.6, 11]. It would appear from this insistence that Defendant is waiving any Attorney Client Privilege with regard to the privilege between Thane and Mr. Kelley.

*Credit Corp.*, 928 F.2d at 1516. In 2005, the Central District of California had 14,070 total civil cases, while the Western District of Oklahoma had 1,812 total civil cases. [Exhibit 11, *Table C-3*, found at http://www.uscourts.gov/caseload2005/tables/C03mar05.pdf]. In the Central District of California, there was an average of 523 cases per judgeship in 2005, while the Western District of Oklahoma averaged 338 total cases per judgeship. [Exhibit 12, *California Central District Judicial Caseload Profile*, found at http://www.uscourts.gov/cgi-bin/cmsd2005.pl; Exhibit 13, *Oklahoma Western District Judicial Caseload Profile*, found at http://www.uscourts.gov/cgi-bin/cmsd2005.pl]. In the Central District of California in 2005, the average time for a civil case *from filing to trial* was 20.5 months, while the average was only 15 months in the Western district of Oklahoma. *[Id.]*.

The Western District of Oklahoma can clearly handle this case more quickly than the Central District of California. Plaintiff, and Defendant, for that matter, are entitled to disposition of their suit in an expeditious manner.

### D.     Transferring the Case to California Merely Shifts the Burdens Complained of by Thane to RKS.

*"Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue."* (emphasis added) *Scheidt*, 956 F.2d at 966; see also *ROC, Inc. v. Progress Drillers, Inc.*, 481 F. Supp. 147, 152 (W.D. Okla. 1979). If the case is transferred to California, RKS will have to either (1) incur great expense in sending their counsel out to California for the trial, or (2) incur the great expense of hiring and informing a new law firm in California. Thane already has retained counsel in Oklahoma and California, so they will not incur extra expense no matter where the case is heard. Thane is the defendant in this lawsuit, so any extra expense should fall on them because RKS had the right to choose the venue in which it filed its

12

action. Finally, any other expenses that will be incurred by Thane will also be incurred by RKS for those of its witnesses that are located in California. If, as Thane asserts in its Brief, many or all of RKS' and Thane's witnesses and documents are located in California, then Thane will suffer no burden that will not also be suffered by RKS. [Exhibit 10, *Thane's Brief in Support of Motion to Transfer*, p. 11]. This was RKS' choice to make, and RKS will have no unfair advantage over Thane.

## CONCLUSION

Defendant's motion simply is not consistent with modern federal litigation, the requirements of Section 1404(a) or the practical conveniences of modern transportation and communications. This is especially incongruous for Defendant whose entire business is dependent upon doing business on not only a national, but an international scale. For the foregoing reasons, Thane's Motion to Transfer must be denied.

Respectfully submitted,

 /s Dan Dooley
Greg A. Castro (OBA No. 11787)
Dan Dooley (OBA No. 18551)
FELLERS, SNIDER, BLANKENSHIP,
  BAILEY & TIPPENS
100 North Broadway, Suite 1700
Oklahoma City, OK  73102-8820
Telephone:   (405) 232-0621
Facsimile:    (405) 232-9659
E-Mail:         gcastro@fellerssnider.com
                    ddooley@fellerssnider.com

ATTORNEYS FOR PLAINTIFFS

13

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2006, I electronically transmitted the attached document to the Clerk of Court using the ECF System for (1) filing and (2) transmittal of a Notice of Electronic Filing to the following ECF registrants: Robert Dace, Charles L. McLawhorn, III, Geoffrey M. Gold, and Gregory J. Sater.

                                              /s Dan Dooley
                                              Dan Dooley

374047.1/68488